KAREN D. GREENSTEIN, *Pro Se*
PLAINTIFF
304 S. Jones Blvd., #5431
Las Vegas, NV 89107
Tel:  408-317-4690
Fax: 408-280-2250
E-mail: kareninlasvegas@greenstein.us

REDACTED COPY FILED PUBLICLY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN D. GREENSTEIN<br><br>      Plaintiff,<br><br>v.<br><br>BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY, BLUE CROSS AND BLUE SHIELD ASSOCIATION, CVS PHARMACY, INC, AND SILVERSCRIPT INSURANCE COMPANY<br><br>      Defendants. | Case No.  26-cv-3469-LL-MMP<br><br>████████████<br><br>**COMPLAINT FOR BREACH OF CONTRACT, FRAUD, UNFAIR TRADE PRACTICES AND MISREPRESENTATION**<br><br>**[Filed under Seal-Motion To Seal filed contemporaneously herewith]**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Karen D. Greenstein ("Plaintiff"), alleges against Defendants Blue Shield of California Life and Health Insurance Company ("BSC"), Blue Cross and Blue Shield Association ("BCBS"), CVS Pharmacy, Inc. ("CVS") and Silverscript Insurance Company ("Silverscript") (collectively "Defendants") as follows:

## SUBJECT MATTER JURISDICTION

1.     This Court has original jurisdiction over the subject matter of each of the claims as the parties are citizens of different states.  Specifically, Plaintiff is a citizen of Nevada, and Defendants are citizens of California, Rhode Island, Illinois,

1 – CONFIDENTIAL COMPLAINT █████████████

and Tennessee.   Defendants do business in California and in San Diego county and the acts complained of involve actions and pharmacies in San Diego county.

2.   The amount in controversy exceeds $75,000, exclusive of interest and costs.

## THE PARTIES

3.   Plaintiff is a citizen and resident of Nevada having an address of 304 S. Jones Blvd., #5431, Las Vegas, NV 89107.

4.   Defendant, Blue Shield of California Life & Health Insurance Company is a corporation incorporated under the laws of the State of California, having its principal place of business in California.

5.   Defendant, Blue Cross and Blue Shield Association is a corporation incorporated under the laws of the State of Illinois, having its principal place of business in Illinois.

6.   Defendant, CVS Pharmacy Inc. is a corporation incorporated under the laws of the State of Rhode Island, having its principal place of business in Rhode Island.

7.   Defendant Silverscript Insurance Company is a corporation incorporated under the laws of the State of Tennessee, having its principal place of business in Rhode Island.

## PERSONAL JURISDICTION AND VENUE

8.   Defendants do business and are engaged in tortious and fraudulent actions affecting California including in this District.

9.   BSC engaged in an agreement with the California Public Employees' Retirement System ("CalPERS") to provide health insurance benefits to CalPERS employees and retirees, including Plaintiff as a retiree.   BSC entered into that agreement, of which Plaintiff is a third-party beneficiary, and has breached the agreement, committed tortious acts and fraud as to the proposed coverage in order

2 – CONFIDENTIAL COMPLAINT –

improperly and tortiously to provide a lower cost to Defendants; all to the benefit of Defendants and to the detriment of Plaintiff.

10. BSC entered into an agreement with CVS to provide prescription benefits to CalPERS employees and retirees and such agreement has been breached, the full scope of those benefits have been "covertly" hidden from employees and retirees, all as part of a tortious and fraudulent scheme to deny benefits and to improperly and fraudulently lower costs so that CVS could illegitimately earn a greater profit and to the detriment of Plaintiff. This tortious and fraudulent scheme directly affects California and has caused CVS Pharmacies, in California and elsewhere, to deny benefits when such benefits were otherwise payable.

11. Blue Cross and Blue Shield Association is the owner of the Blue Shield trademark which has been licensed to BSC. BCBS has an obligation to control and maintain the quality of services rendered by BSC and BCBS by failing to prevent BSC from engaging in tortious and fraudulent activities with the BLUE SHIELD service mark is responsible for that unlawful behavior. BCBS, by licensing BSC, has engaged in activities in California and is responsible for the tortious and fraudulent actions in California.

12. Defendant, Silverscript Insurance Company, has been engaged by CVS to address and deny benefits to employees and retirees of CalPERS and is committing tortious and fraudulent acts in California.

13. Plaintiff has many of her prescriptions filled at CVS Pharmacies, or specialty pharmacies, in San Diego County. As such, the tortious and fraudulent denial of benefits is intimately connected to unlawful actions in this District.

14. Silverscript, which is believed to be, and is thereon alleged to be, run and controlled by CVS, is an active participant in the tortious and fraudulent scheme to deny benefits to employees and retirees of CalPERS and which has caused CVS to deny benefits through CVS Pharmacies in San Diego County; all to

3 – CONFIDENTIAL COMPLAINT ▮

the benefit of Defendants and to the detriment of Plaintiff.

15.    The SILVERSCRIPT trademark is owned by CVS and Silverscript is believed to be a trademark licensee of CVS. CVS has an obligation to control and maintain the nature and quality of services rendered by Silverscript and CVS, by failing to prevent Silverscript from engaging in tortious and fraudulent activities with the SILVERSCRIPT service mark, is responsible for that unlawful behavior. CVS, by licensing Silverscript, has engaged in activities in California and is responsible for the tortious and fraudulent actions in California.

## BACKGROUND

16.    Plaintiff worked in California for approximately 30 years and was, at various times, covered by health insurance plans from CalPERS. Upon her retirement, she pays to continue coverage with health insurance from CalPERS and is insured under the CalPERS Platinum plan.

17.    Plaintiff pays a significant monthly amount for her insurance coverage from CalPERS, which plan is currently administered by BSC. BSC contracts with CVS and Silverscript to provide prescription coverage. Such prescription coverage includes both Medicare Part D ("Part D") and an "extended" benefit coverage. This "extended benefit" is sometimes called a "supplemental benefit." (herein both names refer to the same "Extended Benefit").

18.    ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

19.    ████████████████████████████████████████████
████████████████████████████████████████████████████

4 – CONFIDENTIAL COMPLAINT – ████████████



Both of these drugs were approved by her same (CalPERS self-insured) insurance plan, which at that time, was administered by Anthem Blue Cross (and Optum Rx as used by Anthem Blue Cross for prescription coverage).

24. Two and a half years after Plaintiff went on the ███████████ ████████████████████████ Optum Rx decided to deny coverage.

25. An appeal was filed and Optum Rx ruled that the life-saving drug to counteract the heavy doses of ███████ were not covered by Part D, but were covered by the Extended Benefit under the CalPERS Platinum Plan. As such, Optum Rx approved coverage.

26. On January 1, 2026, CalPERS changed its medical plan administrator from Blue Cross to Blue Shield. Blue Shield changed the prescription manager

5 – CONFIDENTIAL COMPLAINT ███████████████

from Optum Rx to CVS Caremark/Silverscript.

27. █████████████████████████████████

████████████████████████████████████████

28. ██████████████████████████████████

████████████████████████████████████████

29. Defendants have also resisted approving other necessary prescriptions for Plaintiff. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

30. ██████████████████████████████████

████████████████████████████████████████

31. Defendants are doing everything possible to cause Plaintiff extensive and unnecessary pain and emotional distress, and to cause her to suffer additional and permanent medical conditions which could be avoided by drugs available in the marketplace.

32. The ███ drug in issue had been approved on the same CalPERS Platinum plan for 4 years but defendants are now trying to save money by denying this sorely needed drug.

33. █████████████████████████████████

█████████████████████████████

34. █████████████████████████████████

████████████████████████████████████████

35. █████████████████████████████████

## DEFENDANTS' ADDITIONAL TORTIOUS & FRAUDULENT ACTIONS

36. When Defendants' initially refused to approve Plaintiff's ███ drug, defendants refused to process the claim.

37. During January 2026, Plaintiff's husband had several telephone calls with CVS Caremark on the issue totaling approximately 4 hours. On January 27, 2026, Jennifer of CVS said she would submit the claim through the Extended Benefit. Further substantive information was provided including in a call on January 28, 2026 @ 12:20 pm EST.

38. The CVS representatives refused to provide full names or ID numbers so the dates/times and first names are included. Plaintiff specifically requests that all notes and call recordings be preserved as evidence in this case.

39. On January 5, 2026 @ 7:53 pm EST Plaintiff's husband had a call with Jennifer, CVS representative, who said she was putting the medication in for processing under "supplemental" (i.e. Extended Benefit) coverage.

40. On January 27, 2026, Plaintiff's husband recapped and explained to Jassima M in Georgia, about the prior calls to CVS, with Jennifer, CVS representative, on January 5, 2026 @ 7:53 pm EST who said she was putting the medication in for processing under "supplemental" (i.e. Extended Benefit) coverage. Jassima M. in Geogia, said that Jennifer had never submitted such a request as Jennifer even though on January 5, 2026 she said she would.

41. Plaintiff was instructed by Jassima of CVS, to call 877-827-7315, Button 2. After going through more voicemails, Plaintiff's husband was connected to Zishan K. in the Prior Authorization and Appeals Department of CVS.

42. Zishan asked for the name of the drug in issue and put Plaintiff on hold several times. Plaintiff's husband eventually came back on the line and said that supervisor has the account up and is looking at it and he put us on hold again.

7 – CONFIDENTIAL COMPLAINT – ████████

43. A written power of attorney from Plaintiff to her husband was received by CVS on January 4, 2026 @ 5:46 pm EST.

44. Zishan said the CVS has no record of any power of attorney to Plaintiff's husband. Plaintiff then got on the line and Zishan validated Plaintiff with oral permission to speak with her husband. However, Plaintiff was disturbed that CVS refused to honor the written power of attorney on file.

45. California Probate Code § 4406(a) provides:

> If a third person to whom a properly executed statutory form power of attorney under this part is presented refuses to honor the agent's authority under the power of attorney within a reasonable time, the third person may be compelled to honor the agent's authority under the power of attorney in an action brought against the third person for this purpose, except that the third person may not be compelled to honor the agent's authority if the principal could not compel the third person to act in the same circumstances.

46. California Probate Code § 4406(a) provides:

> If an action is brought under this section, the court **shall award attorney's fees to the agent** if the court finds that the third person acted unreasonably in refusing to accept the agent's authority under the statutory form power of attorney.

47. Zishan K. conferenced with Maya from CVS Customer Care as to the power of attorney, and at Plaintiff's husband's request Zishan stayed on the line. Plaintiff's husband gave her the details of transmission -- # pages, time and date the power of attorney was received by CVS.

48. Plaintiff's husband directly asked Maya -- if she was denying receipt and she said she did not have that information. Maya put Plaintiff on hold to check

8 – CONFIDENTIAL COMPLAINT – ███████████████

with a supervisor.

49. Shon W. from the senior resolution department came on the line with Zishan. Shon said CVS has the power of attorney. Zishan and Shon spoke regarding the lack of POA showing up in his computer. Shon told Zishan to use Compass system and go to the alert panel. Shon says the authorization is also in the "work instructions." Shon said the ID for work instructions is ███ and Zishan says he does not have access to the work instructions.

50. Zishan checked with a supervisor again. Zishan's next supervisor found the Power of Attorney. While Zishan was apologetic, this runaround – due to the CVS Caremark "systems" -- is nothing less than outrageous (far beyond unreasonable), is a transparent attempt to put up roadblocks for members, and is simply an unreasonable refusal to honor the power of attorney in violation of the California Probate Code.

51. In addition to the other damages in this action, Plaintiff is seeking attorneys' fees under the California Probate Code for CVS's unreasonable refusal to honor the power of attorney.

52. Dr. ███ office informed Plaintiff that it submitted to CVS the 23-page submission attached as Exhibit 2 to a January pre-authorization request, which included: 1) medical records, 2) a prior appeal to Optum Rx, and 3) a decision by Optum Rx that Part D did not cover the drug but that the Extended Benefit did.

53. Plaintiff was told that CVS will not look at or honor anything that had been submitted to Optum Rx, even though attached to the appeal, and even though it contained medical records and legal arguments.

54. CVS is putting its head in the sand and is refusing to consider medical reports and records of the member prior to the time that CVS took over administration of the benefits for CalPERS.

55. Plaintiff's husband summarized the issues for Zishan.

9 – CONFIDENTIAL COMPLAINT – ███████

56. Zishan then informed Plaintiff that according to his records at CVS:

   a. Prior authorization was requested on January 4, 2026 @ 4:28 PM CST.

   b. Zishan said that notwithstanding the prior approval of the ███ medication by Optum Rx and the self-insured entity, CalPERS, CVS's position is that there is no medical necessity for ███ ███████

   ███████████████ ██████

   ████████████████████████████
   ████████████████████████████
   ████████████████████████████
   ████████████████████████████
   ████████████████████████████

57. Zishan said, however, that CVS will pay for the ███ drug on "secondary" or "supplemental" (i.e., the Extended Benefit) and that there has not been a denial on the Extended Benefit. Zishan ran a test case on the supplemental/secondary benefit and he confirmed the computer says it will pay.

58. Zishan said that the prescription had been refilled recently and the next refill can be picked up on or after February 10, 2026.

59. Plaintiff relied upon the information from Zishan of the Appeals Group at CVS and went to Longs Drugs Pharmacy in Kailua Kona, Hawaii on February 10, 2026 to pick up the ███ medication. Plaintiff quickly learned that CVS was, notwithstanding the assurances by Zishan, yet again refusing to honor its obligations and refused to approve the drug.

60. On February 10, 2026, Plaintiff and her husband spent several more hours and the Longs Drug pharmacist spent 2+ hours dealing with CVS's unjustified and unreasonable refusal to process the drug. After several attempts

10 – CONFIDENTIAL COMPLAINT – ████████████

over a 1-hour period, the pharmacist asked Plaintiff to call CVS Caremark while in front of her. This call took 3 hours, 3 minutes, and 40 seconds. The pharmacist, Plaintiff and Plaintiff's husband spoke with Vanessa in the Coverage Determinations and Appeals division. The pharmacist said she needed 4 pieces of information to process the prescription on the supplemental plan. She needed the BIN, the PCN, the ID and the Group.

61. Vanessa searched for this information and found some numbers. CVS Caremark computer system REJECTED this information when inputted by the pharmacist. Vanessa also contacted her supervisors but no one had the correct numbers. Vanessa also tried the CVS Caremark help desk automated line and obtained new numbers. The pharmacist tried those numbers and the claim was again REJECTED by the CVS Caremark computer system. Vanessa then spoke with a live person at the Pharmacy help desk and obtained new numbers but those numbers were also REJECTED by the CVS Caremark computer system.

62. After an extended wait, Vanessa was able to reach Matt M., (at 2:40 pm HST/6:40 pm CST) a supervisor at the CVS Caremark pharmacy help desk. Vanessa relayed to Plaintiff that Matt M. said he shows the claim going through and he doesn't understand why the claim will not process from Longs pharmacy. The correct numbers to use for the claim are the ones identified. Nonetheless, the claim continued to be REJECTED.

63. At the request of the pharmacist, Vanessa confirmed that Longs Drugs, a division of CVS Pharmacy, is indeed a "contracted" pharmacy under the plan.

64. Plaintiff's husband asked for the contact information for the legal department. Several people have said the claim is covered and should go through but it will not process. Vanessa said she has no contact information for the legal department and she said she even searched Google. Vanessa explained that she was out of ideas and options, and that she was already one hour past her shift end.

11 – CONFIDENTIAL COMPLAINT – █████████

65.    Vanessa transferred Plaintiff to Monica D (this was 2 hours, 25 minutes into the call).  Monica said that she needed to contact her supervisor and put Plaintiff on hold.  Monica asked about possible legal action and Plaintiff's husband told her that if this issue is not resolved, Plaintiff intends to bring a legal action.  Plaintiff also asked that the recordings and notes of all calls be preserved.

66.    Monica then transferred Plaintiff to her supervisor Naomi G. at 3:03 pm HST/7:03 pm CST.  Naomi identified herself as a "Case Coordinator."  Naomi wanted to do everything all over again.  A new prior authorization, a new rejection from Medicare on primary and then seek supplemental coverage.  Plaintiff said "no."  Plaintiff will not repeat the futile task, waste the doctor's time, Plaintiff's time and delay Plaintiff's medication due to CVS Caremark's incompetence after several people have said the system says the drug is approved but the system will not process it.

67.    Naomi then for the first time and contrary to the prior statements by Zishan, Vanessa and Matt of CVS Caremark said that drug was NOT approved.  Apparently, Naomi, in a blatant attempt to avoid litigation, somehow claimed to have retracted the approval conveyed by the computer systems used by Zishan, Vanessa, and Naomi.  As a result, Plaintiff has been severely prejudiced by the conflicting information provided by various people at CVS Caremark, and her health is being endangered.

68.    On February 11, 2026, Naomi called Plaintiff's husband back and said that she was able to get the recording of the call he had with Zishan and that the information Zishan provided was confirmed in that recording.  Naomi said that CVS operates several computer systems and that she didn't know which computer system Zishan was using and could not do anything without that information.  This is obviously an INTERNAL problem with CVS Caremark and Plaintiff should not suffer due to CVS Caremark's inability to maintain appropriate records or

12 – CONFIDENTIAL COMPLAINT – ███████

consistent computer systems.

69. Naomi claims she did several follow-ups and made several calls to Plaintiff's husband but no approval was forthcoming.

70. On February 11, 2026 an appeal was submitted to CVS due to its refusal to process the prescription claim through the Extended Benefit.

71. On February 18, 2026, CVS issued a letter REFUSING TO PROCESS the appeal and continued its refusal to process the claim through the Extended Benefit, asserting that the appeal must go through C2C Innovative Solutions.

72. On February 19, 2026, Plaintiff appealed the refusal to process the claim through the Extended Benefit to C2C Innovative Solutions.

73. Plaintiff spoke with Candice in the Appeal & Grievances office of CalPERS. Candice confirmed that CVS had NOT submitted any Extended Benefit claim to CalPERS and that the appeal to C2C must be pursued.

74. On March 9, 2026, Candice in the Appeal & Grievances office of CalPERS provided the telephone number of C2C and Plaintiff called and got voicemail. A voicemail message was left seeking the status of the appeal. No return call was received from C2C Innovative Solutions.

75. On March 13, 2026, Plaintiff called Candice at CalPERS again informing her that C2C is refusing to act or return calls.

76. On March 13, 2026, Plaintiff again called C2C for the status of the appeal and got voicemail. Another voicemail message was left but again there was no return call.

77. On March 23, 2026, Plaintiff again called Candice at CalPERS and she didn't understand why C2C was ignoring Plaintiff's voicemail messages, and she said she would check into it further.

78. Based upon further calls by Candice at CalPERS with C2C, she was able to learn that C2C made an unfavorable decision on February 26, 2026.

13 – CONFIDENTIAL COMPLAINT

Candice said she did not have a copy of the decision but would get one for Plaintiff.

79. On April 24, 2026, Candice was able to obtain a copy of the decision from C2C and forwarded that to Plaintiff.

80. The C2C decision letter was sent to Plaintiff's 7-year old address and NOT to Plaintiff current address or her husband's address in the appeal. This address was the address the Plaintiff used when Plaintiff was employed and did not reflect Plaintiff's new address when she retired and moved in 2019. CalPERS and all of the Defendants have had Plaintiff's current address for years. Once Plaintiff moved to Nevada in 2019, her mailing address has remained the same. Sending the decision letter to a known old address from 7-years ago further shows the malicious and willful refusal by Defendants to process the legitimate claim.

81. C2C's decision letter totally and completely ignored and did not address the express request to consider the coverage under the Extended Benefit. Instead C2C addressed only Medicare Part D benefits despite the express appeal relating to Extended Benefits.

82. The C2C letter provided a right of appeal for 60 days from the date the letter was received. Since the letter was intentionally, willfully and maliciously sent to a 7-year old address and that C2C intentionally, willfully and maliciously refused to return any calls relating to the status of the appeal, the appeal time period commenced on April 24, 2026, the day of receipt.

83. Since Defendants and C2C have refused to process the claim under the Extended Benefit and have refused to even discuss the coverage under the Extended Benefit, exhaustion of administrative remedies would be futile and is not required.

84. Nonetheless, an appeal of the C2C decision was filed on May 11, 2026 – 17 days after receipt and well within the 60-day deadline after the April 24, 2026 receipt of the denial. Thus, if this court determines that exhaustion of administrative remedies is needed, even though futile, the appropriate appeal was

timely filed.

85.    A hearing on the appeal from the C2C decision has been scheduled for June 25, 2026.

86.    Plaintiff has complied with all conditions for the benefits of the insurance contract.

## FIRST CLAIM FOR RELIEF

### [Fraud & Misrepresentation]

87.    Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein

88.    Defendants willfully, intentionally, and maliciously represented on multiple occasions that the claim would be processed by CVS's computer system; but, CVS knowingly ran at least two separate computer systems so that it could have a "plausible" explanation to deny claims that should have been approved.

89.    Defendants "cooked" the books by using at least two separate computer systems in an intentional, willful, malicious scheme to deny benefits when benefits should have otherwise been approved in order to unlawfully deny claims.

90.    Defendants made misrepresentations of material facts knowing them to be false, and/or recklessly made.

91.    Defendants intended to deceive the Plaintiff and others.

92.    Defendants made misrepresentations for the purpose of causing Plaintiff to act and/or refrain from acting in reliance thereon.

93.    Defendants had no intention of fulfilling the promises made at the time of the false and fraudulent misrepresentations.

94.    Plaintiff justifiably relied on the misrepresentations and was reasonable in so doing.

15 – CONFIDENTIAL COMPLAINT – ██████████████

95.   Defendants' misleading and fraudulent actions have caused actual financial and emotional damage to Plaintiff.

96.   Defendants continued misleading and fraudulent actions, if allowed to continue, will likely cause severe bodily harm to Plaintiff.

### SECOND CLAIM FOR RELIEF

### [Fraud & Misrepresentation -- Concealment]

97.   Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein.

98.   Defendants acted to intentionally hide, conceal, and/or suppress a material fact with the intent to defraud.

### THIRD CLAIM FOR RELIEF

### [Fraud & Misrepresentation – False Promise]

99.   Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein

100.   Defendants made false promises about future performance with no actual intention of keeping such promises.

### FOURTH CLAIM FOR RELIEF

### [Fraud and Unfair Trade Practices in Management of Pharmacy Benefit Plan]

101.   Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein

102.   Plaintiff has paid, and continues to pay, for the Platinum plan through CalPERS, which provides an Extended Benefit for pharmacy claims.

103.   Plaintiff has repeatedly asked Defendants to process the claim through the Extended Benefit for which Plaintiff has paid.

16 – CONFIDENTIAL COMPLAINT – ███████

104. Defendants, in an attempt to save money, and purport to offer its services to CalPERS at a reduced rate, has flatly refused and ignored Plaintiff's express request for benefits under the Extended Benefit program which she purchased from CalPERS.

105. Defendants refusal to consider Plaintiff's claim for benefits under the Extended Benefit was knowing, intentional, willful, and malicious and done for the purpose of Defendants unjust gains.

106. Plaintiff has been informed that Defendants have refused processing of claims by others similarly situated.

107. Defendants actions are an unfair business practice under California Business & Professions Code § 17200.

## FIFTH CLAIM FOR RELIEF

### [Breach of Contract]

108. Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein.

109. There are valid contracts between and among the defendants for the benefit of Plaintiff.

110. Plaintiff contracted with CalPERS for medical benefits, including the Extended Benefit for prescriptions and CalPERS contracted with the defendants to provide those benefits.

111. The purpose and motivation of the contracting parties was to provide a direct and immediate benefit to Plaintiff.

112. Plaintiff has a right to enforce the contracts with Defendants, as a third-party beneficiary, both at common law and under California Civil Code §1559.

17 – CONFIDENTIAL COMPLAINT – ███████████

## SIXTH CLAIM FOR RELIEF

### [Breach of Implied Covenant of Good Faith & Fair Dealing]

113.   Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein.

114.   Defendants' actions constitute a violation of the implied covenant of good faith and fair dealing.

115.   Moreover, Defendants' refusal even to consider coverage under the Extended Benefit, after repeated requests by Plaintiff, is in itself a prima facie breach of the Implied Covenant of Good Faith & Fair Dealing

116.   Plaintiff is entitled to the costs for her medical treatments, for damages for emotional distress, and for punitive damages.

## SEVENTH CLAIM FOR RELIEF

### [Intentional Infliction of Emotional Distress]

117.   Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein.

118.   Defendants' actions above constitute an intentional infliction of emotional distress resulting in severe and/or serious mental suffering.

119.   Plaintiff is entitled to the costs for her medical treatments, for damages for emotional distress, and for punitive damages.

## SEVENTH CLAIM FOR RELIEF

### [Negligent Infliction of Emotional Distress]

120.   Plaintiff realleges and incorporates herein by reference each and every one of the allegations contained in each of the above paragraphs as though fully set forth herein

121.   Defendants' actions above constitute a negligent infliction of

18 – CONFIDENTIAL COMPLAINT ████████████

emotional distress resulting in severe and/or serious mental suffering.

122. Plaintiff is entitled to the costs for her medical treatments, for damages for emotional distress, and for punitive damages

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against all Defendants as follows:

1. That Defendants be required to cover, approve, and pay for Plaintiff's ▮▮▮▮ prescription.

2. That Defendants be required to pay to Plaintiff

   a. All gains, profits, benefits and advantages derived by Defendants from the above-described acts including false and/or fraudulent misrepresentations, unfair trade practices, failure to honor a power of attorney, breach of contract, and violation of the implied covenant of good faith and fair dealing, and that such amounts be determined by the Court;

   b. Damages for emotional distress caused by the actions of Defendants;

   c. Restitution;

   d. Such other damages as the Court shall deem to be just; and

   e. All costs and attorneys' fees incurred in this action.

3. That Defendants be required to pay Plaintiff punitive and enhanced damages in an amount as the Court may determine for malicious, willful, intentional, deliberate and tortious conduct of Defendants.

4. Any and all other and further relief as the Court deems just and proper.

Dated: June 4, 2026          Respectfully submitted,

Karen D. Greenstein, Plaintiff

19 – CONFIDENTIAL COMPLAINT ▮▮▮▮▮▮

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues triable of right by jury.

Dated: June 4, 2026                      Respectfully submitted,

Karen D. Greenstein, Plaintiff